IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF HONOLULU, a Hawaiʻi nonprofit corporation, | ) ) ) ) | Case No. CV 18-00241  LEK-RLP **MEMORANDUM IN SUPPORT OF MOTION** |
| Plaintiff, | ) | |
| vs. | ) ) | |
| ALOHA KAI DEVELOPMENT, LLC, a Hawaii limited liability company; MB PROPERTY ACQUISITIONS, LLC, a Delaware limited liability company; MICHAEL BLUMENTHAL; TAMA HOME AMERICA, LLC, a Hawaiʻi limited liability company; TAMA HOME CO., LTD., a Japanese corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   THE UNDISPUTED FACTS ...................................................3

    A.    Underlying Dispute .............................................................3

    B.    The Fraudulent Transfers ...................................................7

    C.    AKD's Ownership and Control of the Funds in Escrow ......8

III.  LEGAL STANDARD ...............................................................12

IV.  ARGUMENT............................................................................14

    A.    Summary Judgment Should Be Granted for the YMCA Because There is No Genuine Issue of Material Fact that AKD, THA, and MBPA Fraudulently Transferred Funds to Avoid a Judgment .......................14

        1.   There Is No Genuine Issue of Material Fact that the Transfers Were Made to Avoid Paying a Judgment.................14

        2.   There is no Genuine Issue of Material Fact that AKD Had an Interest in the Escrow Funds Such that the UFTA Applies ..............................................15

        3.   AKD Owned and Controlled at Least $6.54 Million of the Escrow Funds.................................................16

        4.   Defendants' Arguments Do Not Create a Genuine Issue of Material Fact Defeating Summary Judgment .............17

            a.   Defendants Have No Credible Evidence Regarding the Equity Funds of $6,540,000 ...........................................17

            b.   The Ownership of the $12,310,000 Loan Proceeds is Irrelevant to this Motion ...............................................18

108974711

B.    Summary Judgment is Appropriate on Counts 1 and 2 of the Counterclaims ................................................................19

V.    CONCLUSION.................................................................................20

108974711

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................14

*Blixseth v. Kirschner* (*In re Yellowstone Mountain Club, LLC*),
  436 B.R. 598 (Bankr. D. Mont. 2010) ...............................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................12

*Hedback v. Am. Family Mut. Ins. Co.* (*In re Mathews*),
  207 B.R. 631 (Bankr. D. Minn. 1997) ...............................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).................................................................13

*Maui Land & Pineapple Co. v. County. of Maui*,
  No. CV 08-00465 SOM/LEK, 2010 WL 1372416
  (D. Haw. Mar. 31, 2010).......................................................13

*McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc.* (*In re Pettit*),
  217 F.3d 1072 (9th Cir. 2000) ............................................16

*Nam Soon Jeon v. 445 Seaside, Inc.*,
  288 F.R.D. 492 (D. Haw. 2013) .....................................12, 13

*Stettner v. Smith* (*In re IFS Fin. Corp.*),
  669 F.3d 255 (5th Cir. 2012) ...............................................16

*Triton Energy Corp. v. Square D Co.*,
  68 F.3d 1216 (9th Cir. 1995) ..........................................13, 17

*Valvanis v. Milgroom*,
  529 F. Supp.2d 1190 (D. Haw. 2007)................................14

*Vegas v. United Steelworkers, Local 12-591*,
  73 F. Supp.3d 1260 (D. Haw. 2014)..................................13

108974711

*Wailua Assocs. v. Aetna Cas. & Sur. Co.*,
    183 F.R.D. 550 (D. Haw. 1998) ........................................................................12

**State Cases**

*Canalez v. Bob's Appliance Serv. Ctr., Inc.*,
    89 Hawai`i 292, 972 P.2d 295 (1999)................................................................19

*Coll v. McCarthy*,
    72 Haw. 20, 804 P.2d 881 (1991) ................................................................19, 20

**State Statutes**

Hawai`i Revised Statutes § 607-14.5................................................................19, 20

Hawai`i Revised Statutes § 651C-1 .................................................................15, 16

Hawai`i Revised Statutes § 651C-4(a)........................................................14, 15, 17

**Rules**

Fed. R. Civ. P. 56(a)...............................................................................................12

Fed. R. Civ. P. 56(c)(1)...........................................................................................13

108974711

<h1 style="text-align:center">MEMORANDUM IN SUPPORT OF MOTION</h1>

## I.  INTRODUCTION

The undisputed facts reveal that as the underlying arbitration was coming to a close last summer, the non-debtor defendants transferred funds that belonged to the judgment debtor Aloha Kai Development, LLC ("AKD") to themselves to hinder or delay the YMCA's effort to collect from AKD.

The fraudulent transfers occurred in early August 2017, when the YMCA was suing AKD in an arbitration over a failed real estate development.  In an effort to enhance its claim that it was entitled to specific performance of the disputed contract (which the YMCA argued was invalid), AKD deposited $18.85 million with the escrow agent in August 2016.  AKD then argued that these were its "own funds" and that they provided good reason for the YMCA to go forward with the transaction.  When that effort failed and the arbitration began, AKD used its deposit of $18.85 million in escrow as the cornerstone of its claim for specific performance in the arbitration.  That failed too.  The Arbitrator ruled against AKD on everything and awarded YMCA the full measure of damages available under the parties' contract, as well as virtually all of the YMCA's attorneys' fees and expenses in the arbitration.  AKD's total liability is now at least $1,963,728.38.

The fraudulent transfers occurred shortly before the arbitration hearing, when the YMCA filed a motion to sequester AKD's funds because it feared that AKD would otherwise be judgment proof.  Instead of leaving the funds

in place, the Defendants moved them before the Arbitrator could rule on the YMCA's motion.

As a result, the escrowed funds were transferred to separate accounts outside escrow belonging to Tama Home America, LLC ("THA") and MB Property Acquisitions, LLC ("MBPA"), the two members of AKD.

As the YMCA anticipated, a few months later it obtained a judgment against AKD that it cannot collect because AKD was, and is, insolvent--apart from the transferred funds. The disputed transfers are indefensible--they were made only to hinder or delay the YMCA in violation of Hawai`i Revised Statutes ("HRS") § 651C-4.

For these reasons, summary judgment is also appropriate in the YMCA's favor on Counts 1 and 2 of the Counterclaims of AKD, THA, MBPA, and Michael Blumenthal. Those Counterclaims are based on the premise that the YMCA's fraudulent transfer claims are frivolous, because AKD never owned or controlled the funds in escrow that were transferred in August 2017 to THA and MBPA. The facts show otherwise. Indeed, these Counterclaims are the only frivolous claims in this case. The Defendants' own documents show that at least $6 million, if not more, of the escrowed funds belonged to AKD before the disputed transfers. Therefore, the Counterclaims fail.

108974711

II.    **THE UNDISPUTED FACTS**

   A.    **Underlying Dispute**

   The present dispute arises from an arbitration between the YMCA and Defendant AKD.  AKD is a limited liability company with two members, THA and MBPA.  (Concise Statement of Facts ("CS") ¶ 2.)  In 2012, the YMCA and MBPA entered into a Purchase and Sale Agreement.  (*Id*. ¶ 1.)  That agreement was later assigned to AKD and then amended and restated (the "PSA").  (*Id*.)

   The PSA involved property the YMCA owns at 401 Atkinson Drive. (CS ¶ 3.)  It provided that the YMCA would subdivide and sell AKD a portion of the property, and in return the YMCA was to receive cash and AKD would build it a new, turnkey, YMCA facility.  (*Id*.)  AKD planned to develop a high rise condominium on the parcel it was to receive.  (*Id*.)  The last possible closing date under the PSA, as further amended, was April 30, 2016.  (*Id*. ¶ 4.)

   AKD defaulted on the PSA when it failed to close on April 30, 2016. (CS ¶ 5.)  Notwithstanding AKD's clear default, the YMCA was extraordinarily indulgent with AKD and continued for months to negotiate a solution to close a transaction.  (*Id.* ¶ 6.)  These negotiations focused on amending the PSA to add new terms, and involved the exchange of drafts of a document called the Second Amended and Restated PSA (the "Second Amendment").  (*Id*.)

3

The parties were not able to reach an agreement on the terms of the Second Amendment that were agreeable to the YMCA. After three months of negotiations, the YMCA had become concerned about the credibility of AKD and its owners and having to rely on AKD to build the new facility. Accordingly, the YMCA exercised its absolute right to terminate the PSA and provided AKD notice of termination on July 28, 2016. (CS ¶ 7; Ex. 4 ¶ 36.) The YMCA never signed the Second Amendment. (CS ¶ 8.)

Then, (1) AKD signed the Second Amendment that the YMCA had rejected and refused to sign (CS ¶ 9); (2) AKD delivered its signature pages to escrow (*id.*); and (3) AKD's members transferred $18.85 million collectively to AKD in escrow (*id.* ¶¶ 9-10). Based on those actions, AKD then tried to convince the YMCA to agree to the Second Amendment and close the transaction by (1) threatening to tie up the YMCA's property for years in litigation so that the YMCA could not market it to anyone else (*id.* ¶ 34); and (2) arguing the transaction should close because AKD had put the $18.85 million in escrow and because AKD was ready to close "with its own funds" (*id.* ¶ 17).

The YMCA finally filed an arbitration against AKD on November 30, 2016. (CS ¶ 18.) It sought to have the Arbitrator rule that the PSA was duly terminated. (*Id.*) The YMCA also sought damages and attorneys' fees. (*Id.*) AKD filed a counterclaim on December 22, 2016. (*Id.* ¶ 19.) Its counterclaim

4

sought specific performance of the Second Amendment that the YMCA refused to sign. (*Id.* ¶¶ 8, 19.) Critical to AKD's specific performance claim was an argument that it performed all its obligations under the PSA. In the Counterclaim it alleged that "**AKD has performed** under the parties' agreement, including **placing** $21,153,788.51 in escrow…"[1] and "**AKD deposited** all funds required to close per the PSA." (*Id.* ¶ 19.) Later AKD filed a brief in the arbitration where it noted that "**AKD's** right to close is clear, because **it** performed all required conditions under the PSA, **including depositing $21,153,788.51 in escrow**…" (*Id.* ¶ 21.)

But there was more: Before and during the arbitration, AKD repeatedly represented that it had deposited the funds needed to complete its purchase of the YMCA's property in escrow at Title Guaranty. It told the YMCA and *the Arbitrator* that:

- The YMCA's arguments against completing the sale to AKD had become "moot in light of **AKD's** placing of all required funds and documents into escrow." (CS ¶ 17.)[2]

- "**AKD** is ready to close **with its own funds**." (*Id.*)

---

[1] It later was undisputed that AKD's reference to $21,153,788.51 was mistaken and that this refers to the $18.85 million that was the actual amount that AKD deposited in escrow.

[2] Emphasis added in quotations in this section unless otherwise noted.

108974711

AKD's admissions are further supported by a mountain of undisputed facts and documents in the record. These include:

- AKD never claimed that it did not own the funds until a year after it deposited them. It only denied owning the funds after the YMCA brought a preliminary injunction to freeze them, and AKD had good reason to trump up its current argument. (CS ¶¶ 23-26.)

- THA's manager, who was also a manager of AKD, admitted in his deposition in the arbitration that **AKD** owned the funds that were fraudulently transferred. (*Id.* ¶ 33.)

- AKD's escrow instructions regarding the escrow funds at issue refer to them as **AKD's** funds and specifically say that they would not be returned in the event of a failure to close unless **AKD** agreed. (*Id.* ¶ 12.)

- The relevant documents show that over $6.5 million of the escrowed funds were equity contributions that had been "absolutely, unconditionally, and irrevocably" given to AKD by THA and MBPA pursuant to a fully executed Capital Contribution Agreement that AKD withheld from the Arbitrator and the YMCA in 2017. (*Id.* ¶¶ 15, 27.)

- Nothing in the escrow instructions suggest that the funds provided by MBPA did not belong to AKD after being advanced to escrow. (CS ¶ 14; Exs. 10, 11.)

The evidence is so overwhelming that AKD owned and controlled the funds in escrow that were fraudulently transferred, that there is no genuine issue of material fact on that issue. At the very least, the evidence shows that the YMCA's claims are not frivolous, and summary judgment is thus appropriate on Counts 1 and 2 of the Counterclaims.

108974711

**B.      The Fraudulent Transfers**

The transfers from escrow occurred in response to a motion for preliminary injunction that the YMCA filed in order to prohibit any such transfers. On July 11, 2017, after the funds had been sitting in escrow for almost a year, the YMCA filed the motion for preliminary judgment seeking to prohibit any transfers of the $18,850,000 deposited in escrow.  (CS ¶ 23.)  The YMCA specifically argued that it was concerned that AKD would transfer those funds to avoid paying a judgment when the YMCA prevailed in the arbitration.  (*Id*.)

On July 31, 2017, AKD filed an opposition to the motion for preliminary injunction.  (CS ¶ 24.)  The opposition claimed that AKD did not actually own the funds deposited into escrow, but that THA and MBPA did.  (*Id*.) This was the first time AKD ever claimed that the funds deposited into escrow were not owned by AKD, but were instead owned by THA and MBPA.  (*Id*. ¶ 25.) AKD also withheld critical documents from the Arbitrator in its July 31 opposition that prove AKD owned the escrow funds.  (*Id*. ¶ 27.)  The YMCA did not have those documents because AKD did not produce them in discovery until months later.  (*Id*.)

After filing its opposition, in a move that showed remarkable lack of confidence both in its argument that it did not own the escrow funds and in its prospects for prevailing in the arbitration, AKD transferred the funds out of escrow

and to accounts owned by its members THA and MBPA.  (CS ¶ 28.)  AKD

notified the YMCA and the Arbitrator of the transfers at 2:22 p.m. on the day the

YMCA's reply brief was due.  (*Id*. ¶¶ 28, 31.)  AKD has never denied that the

reason it transferred those funds was because it wanted to avoid having them used

to satisfy a judgment to the YMCA arising out of the arbitration.  (*Id.* ¶ 16.)

On September 1, 2017, the Arbitrator ruled  that the YMCA's motion

was moot given the transfer of funds and that "the Arbitrator does not, and need

not, address or reach any other issues raised."  (CS ¶ 32.)  He specifically declined

to address the question AKD raised of who actually owned and controlled the

funds transferred from escrow.  (*Id.*)

## C.     AKD's Ownership and Control of the Funds in Escrow

Defendants' only real argument as to why the transfers from escrow

were not fraudulent is that AKD never really owned or controlled the money in

escrow.  As discussed below, ownership and control for purposes of fraudulent

transfer are questions of fact.  Here the undisputed facts are overwhelming that

AKD owned and controlled the escrow funds.

As quoted above, AKD made multiple statements when trying to

convince the YMCA to close or the Arbitrator to order specific performance that

the escrow funds were AKD's "own funds," or that AKD was the entity that

"deposited" the funds and thus "performed."  (CS ¶¶ 17, 19, 21.)  The law firms

8

that represented THA and MBPA, McCorriston Miller Mukai MacKinnon ("M4") and Kobayashi Sugita & Goda ("Kobayashi"), also represented AKD in the arbitration and were involved when all these representations were made, even before they formally appeared for AKD. (*Id.* ¶¶ 20, 22, 30.) The fact that these statements were made, and were never corrected by THA's and MBPA's attorneys, show that AKD and its members certainly thought that AKD owned and controlled those funds--that is, until a big incentive came along to cause them to change their belief. The evidence discussed below shows why AKD was so confident in stating that it owned and controlled the escrow funds: it ***did*** own and control the funds.

THA's sole manager, Ryuichi Masuda, admitted in his deposition that AKD owned the escrow funds that were transferred. Mr. Masuda is the person that signed the THA escrow instructions that are the sole basis for the defense in this case. (CS ¶ 11.) He admitted the following at his deposition:

> Q. Let's talk about the funds that were transferred into escrow around August 12th, 2016. Once those funds were transferred to escrow by Tama Home America, who owned those funds? Was it Tama Home America or AKD?
>
> A. Money from--
>
> IQ. Do you want to wait for--
>
> (Whereupon, the Interpreter translates the question.)
>
> Interpreted Answer: The fund was first transferred to Tama Home America's account, First Hawaiian Bank's account:

9

BY MR. KACPROWSKI:

IQ.  So when it was in escrow, was it AKD's money or Tama Home America's money?

IA.  I have received an escrow instruction from Nancy and I believe it was--***the money was put in the escrow account directly as AKD's fund.***

(Ex. 24 at 90:11-91:2.) (emphasis added).

AKD's escrow instructions prove that AKD owned and controlled the funds.  The instructions define AKD as "Purchaser" as that term is used in the instructions.  (CS ¶ 12.)  It then lists the funds that will be deposited into escrow for the transaction, stating "***Purchaser's funds*** will be deposited and paid as follows" and it lists the entire $18.85 million that was deposited into escrow.  (*Id.*; Ex. 11.)

The "Failure of Closing" section of the escrow instructions also demonstrates that AKD's consent was necessary to release the escrow funds. Section D of the instructions further noted that in the event of a failure to close by August 29, 2016 "the Escrow Agent shall hold **all funds** and instruments until further instructed **by the Purchaser**."  (CS ¶ 12.)  That provision was so important to AKD, that AKD subsequently amended the instructions just to change the date in that section after the transaction did not close in August 2016.  (*Id*. ¶ 13.)

Defendants suggest in their counterclaims that the $18.85 million in escrow were funds "that were to be loaned to AKD by its members to facilitate the

closing." (ECF 20 ¶ 11; ECF 25-1 ¶ 11; *see also* ECF 19-1 ¶¶ 11-15.) These allegations gloss over the fact that, at most, only a portion of the $18.85 million was a loan. At least $6.54 million was equity THA and MBPA contributed to AKD. A capital contribution agreement between THA, MBPA, and AKD ***proves*** that this capital contribution was already made such that AKD unquestionably owned that portion of the $18.85 million.[3] The Capital Contribution Agreement provides that:

> Concurrently **with the execution and delivery of this Agreement**, each Member hereby absolutely, unconditionally, and irrevocably pays, assigns, transfers, conveys, sets over, and delivers to the Company as an Additional Capital Contribution, and the Company hereby acknowledges receipt and accepts from each such Member, the following respective amounts **in cash**:
>
> (a)    From MBPA, the aggregate sum of Two Million Five Hundred Thousand Dollars ($2,500,000); and
>
> (b)    From Tama Home, the aggregate sum of Four Million Forty Thousand Dollars ($4,040,000).

(Ex. 2) (emphasis added). The Agreement was fully executed by all parties. The contribution amounts in the Agreement correspond exactly with the "equity funds"

---

[3] To be clear, based on the facts discussed in this section, AKD also owned and controlled the portion of the funds that were loan proceeds as well. But with respect to the equity portion, the Defendants really have no legitimate argument that AKD lacked ownership over those funds.

108974711

that went in the respective holding accounts for THA and MBPA and are listed in the escrow instructions as AKD's funds.  (Exs. 10, 11.)  AKD owned those funds.

Disturbingly, AKD **concealed this document from the Arbitrator and the YMCA** when opposing the motion for preliminary injunction.  It was not produced to the YMCA until months later.  (CS ¶ 27.)  In other words, AKD picked and chose the transaction documents it submitted to the Arbitrator in its opposition, and this one was not among them, for obvious reasons.

Finally, there is no document or escrow instruction that even arguably supports the notion that MBPA retained ownership of the $2.5 million it deposited into escrow.  MBPA's counterclaim alleges, contrary to every document in the record, that the $2.5 million was a loan from MBPA.  (ECF No. 25-1 ¶ 11.)  As noted above, those funds were an equity contribution to AKD.  MBPA had no separate escrow instructions and has no evidence whatsoever on its claim that those funds were a loan rather than an equity contribution.  (CS ¶ 14.)

III.   **LEGAL STANDARD**

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact..."  *Nam Soon Jeon v. 445 Seaside, Inc.*, 288 F.R.D. 492, 495 (D. Haw. 2013) (citing Fed. R. Civ. P. 56(a)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Partial summary judgment can be granted as to particular claims or defenses.  Fed. R. Civ. P. 56(a); *see Wailua Assocs. v. Aetna*

108974711

*Cas. & Sur. Co.*, 183 F.R.D. 550, 564 (D. Haw. 1998) (granting partial summary judgment on affirmative defense). Where the record could not "lead a rational trier of fact to find for the non-moving party," there is no genuine issue for trial. *Maui Land & Pineapple Co. v. County of Maui*, No. CV 08-00465 SOM/LEK, 2010 WL 1372416, at *4 (D. Haw. Mar. 31, 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, once that burden has been met, the nonmoving party must come forward and establish the specific material facts in dispute to survive summary judgment. *Nam Soon Jeon*, 288 F.R.D. at 495; *Matsushita*, 475 U.S. at 587. In establishing such a dispute of material fact, the non-moving party must "cit[e] to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Nam Soon Jeon*, 288 F.R.D. at 495 (citing *Matsushita*, 475 U.S. at 586). "At least some significant probative evidence tending to support the complaint must be produced," and "[a] scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Vegas v. United Steelworkers, Local 12-591*, 73 F. Supp.3d 1260, 1267 (D. Haw. 2014); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of

evidence in support of the non-moving party's position is not sufficient[ ]" to defeat summary judgment); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986).

## IV.  ARGUMENT

### A.  Summary Judgment Should Be Granted for the YMCA Because There is No Genuine Issue of Material Fact that AKD, THA, and MBPA Fraudulently Transferred Funds to Avoid a Judgment

Under the Uniform Fraudulent Transfer Act ("UFTA"), a transfer is fraudulent if made with "actual intent to hinder, delay, or defraud any creditor…" HRS § 651C-4(a).  A party with an active claim in litigation is a "creditor" even before the claim is reduced to a judgment.  *Valvanis v. Milgroom*, 529 F. Supp.2d 1190, 1198 (D. Haw. 2007).  Transferring property to another specifically to avoid paying a creditor is enough to establish an intentional fraudulent transfer.  *Id*.

#### 1.  There Is No Genuine Issue of Material Fact that the Transfers Were Made to Avoid Paying a Judgment

Defendants have never denied that the purpose of the transfers in August 2017 was to avoid having the funds in escrow used to pay a judgment in favor of the YMCA.  Given the circumstances of the transfers, they could not possibly deny it.  The entire defense is unrelated to the intent behind the transfers.  Rather it is an argument that a transfer could not have occurred because AKD did not own or control the money.

14

## 2. There is no Genuine Issue of Material Fact that AKD Had an Interest in the Escrow Funds Such that the UFTA Applies

Defendants argue that the UFTA requires AKD to have owned or controlled the escrow funds. Although, as discussed below, AKD did own and control those funds, Defendants misread the law. Ownership is not required. All that is required is an "interest" in the escrow funds, which AKD certainly had.

The UFTA applies to "transfers" with the intent to avoid a creditor. HRS § 651C-4(a). "Transfer" is a defined term in the statute.

"'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or ***an interest in an asset***, and includes a payment of money, ***a release***, a lease, and the creation of a lien or encumbrance." HRS § 651C-1 (emphasis added).

In other words, a transaction can be a fraudulent conveyance even if the thing transferred is not owned by the debtor, as long as the debtor has an "interest" in the property. For example, a debtor may have a claim against property or a security interest in it, and release of such a claim or interest to avoid paying a debtor is a fraudulent transfer. *See Blixseth v. Kirschner* (*In re Yellowstone Mountain Club, LLC*), 436 B.R. 598, 668 (Bankr. D. Mont. 2010) (holding that the debtors' release of claims against plaintiff was a fraudulent transfer); *Hedback v. Am. Family Mut. Ins. Co.* (*In re Mathews*), 207 B.R. 631,

15

645, 649 (Bankr. D. Minn. 1997) (recognizing that the debtor's release of bad faith claims against defendant was a transfer for purposes of a fraudulent transfer).

At the very least, AKD had an interest in all the funds in escrow under the Capital Contribution Agreement and the escrow instructions for THA and AKD.  (Exs. 2, 10, 11.)  Indeed, AKD's instruction was required to transfer those funds from escrow, ***even if a closing with the YMCA did not occur***.  (CS ¶ 12; Ex. 11.)  This represents a claim and/or interest against those funds, which AKD released when the transfer occurred.  *See* HRS § 651C-1 (a release of an interest constitutes a "transfer" for purposes of the UFTA).

### 3.    AKD Owned and Controlled at Least $6.54 Million of the Escrow Funds

Given the extreme weight of the evidence, there is no genuine issue of material fact that AKD owned and controlled at least the $6.54 million equity portion of the escrow funds.  The ownership of an asset for purposes of a fraudulent transfer is generally an issue of fact.  *See Stettner v. Smith* (*In re IFS Fin. Corp.*)*,* 669 F.3d 255, 262 (5th Cir. 2012) (holding in a fraudulent transfer case that "control may be sufficient to show ownership in what is ultimately a fact-based inquiry that will vary according to the peculiar circumstances of each case" and recognizing that Texas law directs courts to examine the individual facts of each case rather than the legal relationship between the parties); *see also McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc.* (*In re Pettit*), 217 F.3d

16

1072, 1078 (9th Cir. 2000) (recognizing that the rights to possess, use, sell, loan, give away, encumber, or exclude others from using funds is associated with legal and equitable ownership of funds). Just like any other factual issue, however, where the evidence so overwhelming supports one side's factual claim, and there is none or only a "scintilla" of evidence to the contrary, summary judgment is appropriate. *Triton Energy Corp.*, 68 F.3d at 1221.

This is such a case where the evidence is so overwhelmingly one-sided that summary judgment is appropriate. The evidence, which starts with AKD's own repeated admissions, is detailed above and will not be reiterated. Given that AKD owned and controlled at least the $6.54 million of the escrow funds, and the purpose of the transfers was to avoid paying a judgment to the YMCA, they were clearly fraudulent under the UFTA. HRS § 651C-4(a).

### 4. Defendants' Arguments Do Not Create a Genuine Issue of Material Fact Defeating Summary Judgment

#### a. Defendants Have No Credible Evidence Regarding the Equity Funds of $6,540,000

Defendants' allegations are premised almost entirely on THA's escrow instructions regarding the loan portion of the escrow funds. Reading their counterclaims, for example, one would think that the entire amount put in escrow was a loan. But as set forth above, $6,540,000 was unquestionably an equity contribution, and not a loan. They have no evidence to support an argument that

17

the $6,540,000 in equity that THA and MBPA contributed to AKD was not owned by AKD. The THA escrow instructions do not state that THA's $4,040,000 equity contribution is a loan, but rather clearly indicates it is an equity contribution. (Ex. 10 at 1.) MBPA did not even have escrow instructions regarding its $2.5 million contribution upon which it can base an argument like the one THA makes. Summary judgment is therefore appropriate as to at least the equity funds transferred.

> **b.    The Ownership of the $12,310,000 Loan Proceeds is Irrelevant to this Motion**

Defendants' argument that AKD did not own the $12,310,000 in loan proceeds will not defeat summary judgment here. Defendants argue that THA's escrow instructions show that THA, not AKD, owned the money. To be sure, the YMCA contends that AKD also owned and controlled the $12.31 million in loan proceeds, as those had ***already*** been loaned to AKD by the time of the fraudulent transfers. THA misreads its own escrow instructions, which, along with other evidence, proves that the $12.31 million loan was already made to AKD long before the fraudulent transfers. A discussion of that evidence, however, is not necessary to grant summary judgment with respect to liability for fraudulent transfer. The transfer of the $6,540,000 in equity that AKD owned shows that AKD, THA, and MBPA committed an intentional fraudulent transfer.

18

**B.    Summary Judgment is Appropriate on Counts 1 and 2 of the Counterclaims**

The four nearly identical counterclaims all seek a finding that the YMCA's fraudulent transfer case is frivolous pursuant to HRS § 607-14.5. Count 1 seeks a declaration that the YMCA's fraudulent transfer claims are frivolous. Count 2 seeks an award of fees and costs. A finding of frivolousness requires "a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required." *Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai`i 292, 300, 972 P.2d 295, 303 (1999).

*Coll v. McCarthy*, 72 Haw. 20, 804 P.2d 881 (1991) demonstrates the high standard for making a frivolous finding. The *Coll* plaintiff moped operator was struck by an automobile whose driver was insured under a Hawaiian Insurance & Guaranty Company, Ltd. ("HIG") insurance policy. *Id.* at 21, 804 P.2d at 883. In his complaint, the plaintiff alleged that HIG wrongfully paid the maximum insurance benefits to plaintiff's attorney in violation of a statute that required payment made to the person injured. *Id.* at 30, 804 P.2d at 887. The plaintiff's allegation, however, was false; in responding to HIG's counterclaim, the plaintiff **admitted** that he received HIG's draft that was made payable to himself and that he endorsed the draft over to his attorney. *Id.* The Court found that there was no need to look beyond the pleadings or to invite argument to conclude that the claim was manifestly and palpably without merit. *Id.* The Court further found that the

19

plaintiff's knowledge at the time of filing his complaint that he was the payee on the draft indicated bad faith. *Id.* at 30, 804 P.2d at 888. The Court concluded that the trial court was clearly erroneous in not finding the plaintiff's claim against HIG to be frivolous under HRS § 607-14.5. *Id.* at 32, 804 P.2d at 888.

*Coll* demonstrates the type of facts that are required for a frivolous finding, *e.g.*, knowledge at the time of filing that the facts underlying the claim are false. Not only are the YMCA's claims not frivolous, as discussed above, ***the YMCA should win summary judgment***. But even if the Court denies the YMCA's motion and finds triable issues, given the facts discussed above, the YMCA's claims simply do not meet the frivolousness standard. Even when the Court grants summary judgment ***against*** a plaintiff, that typically does not mean that the claim is frivolous. The only frivolous claims in this action are Counts 1 and 2 of the Counterclaims. The Court should grant summary judgment in favor of the YMCA so that neither the Court nor the parties waste any more resources on these inane counterclaims.

## V. CONCLUSION

For the foregoing reasons, the Court should:

(1) grant partial summary judgment as to liability in the YMCA's favor and against AKD, THA, and MBPA on Count 1 of the Complaint; and

20

(2) grant partial summary judgment in the YMCA's favor on Counts 1 and 2 of the counterclaims of AKD, MBPA, THA, and Michael Blumenthal.

Dated:  Honolulu, Hawai`i, September 27, 2018.


 /S/ NICKOLAS A. KACPROWSKI
PAUL ALSTON
NICKOLAS A. KACPROWSKI
WENDY F. HANAKAHI

Attorneys for Plaintiff
Young Men's Christian Association of
Honolulu

21